Brian A. Ertz (ISB No. 9960)
ERTZ LAW PLLC
P.O. Box 665
Boise, Idaho 83701
(208) 918-1663 (Telephone)
(208) 416-6665 (Fax)
brian@ertzlaw.org

Scott Rose (ISB No. 4197)
Scott Rose, P.C.
Boise, Idaho 83702
(208) 342-2552 (Telephone)
scott@idahoiplaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

|  |  |
|---|---|
| **SHELLI BOGGIE**, an individual,<br><br>                    Plaintiff,<br><br>v.<br><br>**CITY OF CALDWELL**, an Idaho Municipal corporation; **JAROM WAGONER**, Mayor of the City of Caldwell, individually and officially; and JOHN & JANE DOES 1-10,<br><br>                    Defendants. | Case No.   1:25-cv-85<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, the Plaintiff, SHELLI BOGGIE, by and through her counsel of record,

Brian A. Ertz of Ertz Law, PLLC, for causes of action against the Defendants, complains and

alleges as follows:

## INTRODUCTION

This action seeks monetary and declaratory relief, alleging that Plaintiff Shelli Boggie has been injured, and will continue to be injured, as a result of Defendants' violation of the Idaho Whistleblower Act and as a result of Defendants' denial and violation of Plaintiff's constitutional rights.

## I.    JURSIDICTION AND VENUE

1.   This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, for Plaintiff's claims arising under federal law and § 1367 grants this Court's supplemental jurisdiction for Plaintiff's state law claims. Plaintiff brings her claims under 42 U.S.C. § 1983 to vindicate her rights pursuant to the First and Fourteenth Amendments of the United States Constitution.

2.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) and (c) because the violation occurred within Canyon County, Idaho; Plaintiff resides in Star, Idaho; and the City of Caldwell resides in and conducts business within Canyon County, Idaho.

3.   Based on the allegations set forth herein, the Court has personal jurisdiction over all Defendants in this action.

## II.    NOTICE OF CLAIM

4.   On or about October 1, 2024 Plaintiff timely filed a Notice of Tort Claim against Defendants pursuant to the Idaho Tort Claims Act, Idaho Code §§ 6-901 *et seq*.

## III.    PARTIES

5.   Plaintiff SHELLI BOGGIE ("Ms. Boggie" or "Plaintiff Boggie") is now, and at all times relevant herein was, a resident of Ada County, State of Idaho.

6.   Defendant CITY OF CALDWELL (hereinafter "Defendant City") is now, and at all times

relevant herein was, a political subdivision and municipal corporation in Canyon County, State of Idaho. Defendant CITY OF CALDWELL is an employer as defined by Idaho Code § 6-2103.

7. Defendant JAROM WAGONER ("Mayor" or "Defendant Wagoner") is now, and at all times relevant, a resident of Canyon County. Defendant Jarom Wagoner was Mayor of the City of Caldwell and the chief policy and decision-maker charged with oversight, supervision, and training of municipal officers, appointees, and employees. He is being sued in his individual and in his official capacity.

8. Defendants JOHN and JANE DOEs 1-10 are as-yet unidentified employees, representatives, agents, and/or public officials of the City of Caldwell.

## IV.    GENERAL ALLEGATIONS

9. Plaintiff Shelli Boggie is an experienced Human Resources professional who began employment with the Defendant City of Caldwell as its Human Resources Director on November 7, 2022.

10. The City Code of the City of Caldwell provides that the Human Resources Director "shall work under the general guidance and direction of the mayor." Caldwell City Code § 03-11-01 (Ord. 2871, 3-7-2011).

11. The powers and duties of Defendant City of Caldwell's Human Resources Director include:

> (1) General Statement Of Duties: The human resources director plans, directs, organizes, manages and implements the city's compensation and benefits package and personnel policies; coordinates with the city officials, department managers and employees; prepares and develops annual budgets and monitors expenditures; develops, presents and implements training and educational materials and programs for city employees; reviews employment laws and policies to ensure compliance; develops and administers the city's compensation and pay plans.

(2)   Supervision Exercised: The human resources director exercises oversight for all personnel related activities. He/she works closely with the mayor, officials and department heads to coordinate, implement and ensure policy compliance. Direct supervision is exercised over the human resources staff.

Caldwell City Code § 03-11-05 (Ord. 2871, 3-7-2011).

12. The position was Plaintiff Boggie's dream-job. It amounted to the culmination of achievement and professional success of Plaintiff Boggie's lifetime spent in human resources management and public service.

13. The City of Caldwell Human Resources Director position also allowed Plaintiff Boggie to return from Oregon, where she served as a human resources director for a small rural county, back to western Idaho—where her daughter had recently given birth to Plaintiff Boggie's first grandchild, so that she could be close to family.

14. Upon considering the opportunity to serve, Ms. Boggie was aware of prior controversies that had plagued the City of Caldwell, but saw this unfortunate recent history as an opportunity to contribute her own professional experience, energy, and abilities—together with her colleagues—to ensure the City of Caldwell's Human Resources Department would establish a reputation statewide for its efficiency, professionalism, and integrity; a reputation that any Idaho municipality—or institution, for that matter—could envy.

15. In January 2024 an internal complaint originating from a City of Caldwell employee against City of Caldwell Chief of Police Rex Ingram,[1] prompted Defendant City Mayor Jarom Wagoner to consult with Plaintiff Boggie regarding how the City of Caldwell should investigate, adjudicate, and issue employment responses to the employment-related allegations, reports,

---

[1] See: *Allison Butler v. City of Caldwell et al*, U.S. District Court for the District of Idaho; Case No. 1:25-cv-00067-DKG as filed February 6, 2025; (ECF Docket No. 1, 'General Allegations' at 3-16, ¶¶ 9-77).

complaints, and the Caldwell Police Department's actions alleged to violate City Policy and state and federal employment law.

16. On or about January 2024, at the request of Defendant Wagoner, Plaintiff Boggie initially investigated the employment matters put before her and, together with and in consultation with the City Attorney's office and the Mayor's Office—on Plaintiff Boggie's advice—the City commissioned an outside employment law firm to conduct its own independent investigation into gender discrimination and sex-based hostile workplace environment complaints against the Police Chief.

\*

17. On or about mid-January 2024 the City of Caldwell commissioned an outside law firm to conduct an independent investigation into complaints against Chief Ingram and to issue a report including formalized findings ("Investigation Report") to inform the City's response.

18. Plaintiff Boggie was also tasked with conducting initial and related interviews, and did so perform interviews, of certain witnesses in tandem with the outside investigation, which she submitted to the outside investigator.

19. The reports against Chief Ingram—and Chief Ingram's workplace conduct and allegations regarding his official conduct in response to the complaints, included allegations that, if shown to be true, would reasonably be understood to amount to sexual harassment in the workplace, sexual and/or racial discrimination in the workplace, the creation of a hostile workplace environment, government waste, corruption, and violations of City Policy, the Idaho Human Rights Act, the Idaho Whistleblower Act, Title VII of the Civil Rights Act of 1964, among other anti-corruption and anti-discrimination rules and laws including city, state, and federal prohibitions against intimidation and retaliation attending the law.

20. On or about March 22, 2024 Plaintiff Boggie was given a hard copy of the finalized Investigation Report. The Investigation Report included the outside investigators' findings concerning the sex discrimination, harassment, and hostile workplace environment allegations of City employee(s) against Chief Ingram.

21. The final Investigation Report findings did not adjudicate nor otherwise purport to decide nor conclude whether or not Chief Ingram had violated the law or City Policy. Instead, the Investigation Report listed reports and allegations of misconduct that had been reported by City employees and determined whether or not, given the outside investigators' efforts, those allegations were substantiated by corroborating evidence and/or the corroboration of witnesses. A finding that an allegation was "unsubstantiated" did not exonerate nor otherwise settle whether or not misconduct had, or had not, occurred as reported and alleged. Instead, a finding that an allegation was substantiated indicated that an allegation was evidenced beyond a witness's or complainant's sole account. Put simply, the report documented whether investigators were able to find that allegations were based on more than, or merely, a complainant's or witness's 'he-said, she said' report or account.

22. The Investigation Report found several of the City employee(s)'s allegations were substantiated, but abstained from concluding clear violation of law or City Policy. The Investigation Report also found that many of the City employee(s)'s allegations were not substantiated – some allegations could not be corroborated, thus were found to be 'unsubstantiated.'

23. The Investigation Report also spoke to Chief Ingram's relationship with a deputy City Attorney assigned to personnel issues, Ms. Taylor Yett, which had become inappropriately close.

24. Plaintiff Boggie reviewed the Investigation Report and based upon her consideration of

the totality of the circumstances—including the Human Resource Department's treatment of employees who had exhibited similar conduct in the past, developed a recommendation for the Mayor concerning what she believed would be an appropriate response from the City.

\*

25. On or about March 25, 2024 Plaintiff Boggie met with Defendant Jarom Wagoner to discuss the Investigation Report and, at the mayor's request, to issue her recommendation regarding its findings and the City employee(s)'s complaints.

26. At the March 25, 2024 meeting between the mayor and Plaintiff Boggie, Plaintiff Boggie proffered her recommendation concerning the Police Chief's employment with the City of Caldwell.

27. Plaintiff Boggie explained her rationale for issuing the recommendation, which expressed her opposition to sex discrimination, sex-based harassment, and hostile work environment discrimination.

28. On or about March 25, 2024 Defendant Jarom Wagoner communicated Ms. Boggie's recommendation to Mark Hilty, then the Defendant City of Caldwell's lead City Attorney.

29. On information and belief; confirmed by Ms. Yett to Plaintiff Boggie weeks later on May 15, 2024; Mr. Hilty communicated Plaintiff Boggie's recommendation to Ms. Yett on or about March 25, 2024.

30. On information and belief, given Ms. Yett's relationship with Police Chief Rex Ingram and the close relationship members of the Caldwell City Council shared with Police Chief Ingram, Police Chief Rex Ingram and members of the Caldwell City Council became aware of Ms. Boggie's recommendation between late March and early April 2024.

31. On or about March 26, 2024—Tuesday—Plaintiff Boggie, Mark Hilty, and Defendant

Jarom Wagoner, met and discussed options for the City's response to the investigation. The Mayor and the City Attorney declined to consider Plaintiff's recommendation. Plaintiff Boggie was tasked with drafting a letter to the Chief of Police detailing the City's response.

32. Plaintiff Boggie drafted a letter and immediately provided the draft to the Mayor and City Attorney Mark Hilty for their review.

33. On or about that same week; the week of March 25, 2024; while speaking with Deputy City Attorney Yett, the deputy attorney assigned to personnel for the City, concerning a different matter, Ms. Yett indicated that Chief Ingram had communicated to Ms. Yett the difficulty of working alongside one of the witnesses ("*Witness A*") interviewed during the investigation informing the Investigation Report, who worked in close proximity to the Chief, now that the internal investigation was over. Ms. Yett inquired with Plaintiff Boggie as to what she should tell the Chief. Ms. Boggie instructed Ms. Yett to tell the Chief to be professional and respectful and to go on about business.

34. Ms. Yett told Plaintiff Boggie that it would be "untenable" for the Chief to go about business alongside *Witness A* following the internal investigation. Ms. Boggie told the deputy City Attorney that he would have to do so—he must be professional, that is the law.

35. On information and belief, on or about April 1, 2024 Defendant Jarom Wagoner had a meeting with the City of Caldwell Deputy Chief of Police Sopoaga and Lieutenant Tucker without Plaintiff Boggie present. The meeting concerned moving *Witness A* from her position in proximity to the Chief of Police to the Records Department of the City of Caldwell Police Department.

36. The prospective move of *Witness A* was later explained to Ms. Boggie as being

unrelated to the investigation or complaint, but that the Police Department had determined that the Chief no longer needed the role that *Witness A* had occupied—and that the department was understaffed in Records, which was—admittedly—consistent with staffing assessments that preceded *Witness A*'s participation in the investigation.

37. On or about April 2, 2024 Plaintiff Boggie, the Human Resources Director for the City of Caldwell, received her performance evaluation from Defendant Jarom Wagoner, the Mayor. The performance evaluation memorialized Plaintiff's positive performance for the City of Caldwell.

38. On or about April 4, 2024 Defendant Jarom Wagoner and Plaintiff Boggie met with *Witness A* and informed her that there was a re-organization in the police department and that she was being reassigned to the Caldwell Police Department Records department.

39. At the meeting *Witness A* reported to the Mayor and to Ms. Boggie that she did not want the move, and that she believed the move was retaliation for her participation in the investigation of Chief Ingram. *Witness A* looked at Ms. Boggie and squarely solicited her help.

40. On or about April 5, 2024 Plaintiff Boggie emailed Defendant Jarom Wagoner information on a training webinar entitled 'Creating a Welcoming & Respectful Work Culture' that Idaho Counties Risk Management hosted and asked the Mayor and City Attorney whether it would satisfy the Mayor and City Attorney's decision regarding the City's training requirement response to the Ingram matter. That same day the City Attorney, Mark Hilty indicated his approval but suggested that the Chief could choose his own course—one that he likes of similar content.

41. That same day Plaintiff Boggie forwarded the training to the Chief via email.

42. The Chief responded he would prefer the City to select training that they think is appropriate.

43. On or about April 6, 2024 Chief Ingram sustained an injury from an off the job accident.

44. On April 8, 2024 Plaintiff Boggie sent Chief Ingram an email with the registration link to the aforementioned webinar.

45. On or about April 9, 2024 City of Caldwell City officials were notified of the Chief's accident and injuries. Later that day Plaintiff Boggie learned that, despite his serious injury, the Chief intended to return to work the following day, on April 10, 2024.

46. That same day, on or about April 9, 2024—pursuant to City of Caldwell policy and practice—Plaintiff Boggie had requested a medical release prior to return to work from another employee who had sustained an injury while on time off. The employee at issue ("*Complainant A*") sustained an injury while taking time-off pending a gender discrimination complaint made against Chief Ingram. In order to return to work, *Complainant A* was required to provide a medical release given the injury.

47. Accordingly, at or about 5:49 p.m. on April 9, 2024 Plaintiff Boggie sent Chief Ingram a request for a medical release for his own return to work, per City policy, practice, and in order to ensure equal treatment of all City employees.

48. At or about 6:12 p.m. the Mayor waived Ms. Boggie's request of Chief Ingram for a medical release prior to Chief Ingram's return to work.

49. On or about April 11, 2024, the Mayor served Chief Ingram a letter regarding the findings of the Investigation Report. The letter had been modified by the Mayor to exclude several of the Investigation Report findings that were substantiated by investigators and that Ms. Boggie had included in the first draft.

\*

50. That night, at or about 9:40 p.m. on April 11, 2024, Deputy Chief of Police Sopoaga emailed Plaintiff Boggie and City of Caldwell Finance Director that Chief Ingram wished to fill the position that had been moved to Records one week prior.

51. On April 12, 2024 Plaintiff Boggie read Police Chief Sopoaga's email and had a realization. Ms. Boggie determined that, in her professional judgment, it was more likely than not that the City of Caldwell's decision to reassign *Witness A* to Records was an act of retaliation against *Witness A* for her participation in the Investigation Report.

52. That morning—April 12, 2024, Plaintiff Boggie immediately reported to Taylor Yett, the deputy City Attorney assigned to personnel, about Deputy Chief Sopoaga's email the night prior. Ms. Boggie reported to Ms. Yett that she had been told the Chief did not need the role that *Witness A* had held—and that the Deputy Chief's request suggested that the previous reason given for *Witness A*'s move to Records was pretextual, and that the move amounted to retaliation against *Witness A* for protected activities.

53. That morning Ms. Boggie told Ms. Yett that she had a moral, professional, and legal obligation to tell the truth, which some people will not be happy about. Ms. Boggie told Ms. Yett that she was unwilling to abstain from truthful testimony or participation in any ongoing or future investigation, administrative complaint, or judicial process involving what she believed to be retaliation against *Witness A*.

54. On or about May 2, 2024 Ms. Boggie visited Defendant Wagoner, the Mayor, to give him a copy of her own performance evaluation, *supra*, acknowledged and signed by her.

55. As Ms. Boggie gave Defendant Wagoner the evaluation, Defendant Wagoner told Ms.

Boggie that there was a high likelihood that she would not be reappointed to the position of City of Caldwell Human Resources Director the following September 2024, and that her job was in extreme jeopardy.

56. The news that Ms. Boggie's employment was in jeopardy shocked Plaintiff Boggie. Ms Boggie wondered why the Mayor would be telling her this information now, months before the end of her term.

57. During the conversation between Ms. Boggie and Defendant Wagoner, on or about May 2, 2024, the Mayor told Ms. Boggie that the recent uncertainty in Ms. Boggie's employment was related to complaints received from "Police and Fire." Additionally, Defendant Wagoner notified Ms. Boggie that City Council Member Geoff Williams had stated he would not support her reappointment in a conversation between the two that took place on or about April 16, 2024.

58. Upon information and belief, City Council Member Geoff Williams is a volunteer Chaplain with the Caldwell Police Department and in regular contact with Chief Ingram.

59. The Mayor further explained that he was uncertain about other Council members, but that Council members Register, Doty, Stoddick, and Allgood typically voted pro-police—suggesting that the fact would now be a problem for Ms. Boggie's prospect at being reappointed.

60. This news was unexpected by Ms. Boggie, as she had only recently received a written performance evaluation from Defendant Wagoner, *supra*, that indicated she had been performing well in her position as Human Resources Director. She was handing him her signed acknowledgment copy of the evaluation at that very encounter with the Mayor.

61. Devastated by the news, Ms. Boggie took the afternoon of May 2, 2024 off of work.

62. The following day, on or about May 3, 2024, Defendant Wagoner sent an email to Ms. Boggie indicating that the "storm" regarding her prospect for reappointment might pass.

63. Given the closeness in time that Defendant Wagoner's meeting with Council member coincided with her recommendation regarding the Investigation Report and her report of retaliation against *Witness A*, Ms. Boggie understood the Mayor's notice to be an ultimatum from the Defendant City.

64. Ms. Boggie understood by the Mayor's message to infer that her support of Chief Ingram was more important than the ethical and legal obligations of her station with the City.

65. On or about May 7, 2024 Ms. Boggie and the Mayor had their weekly meeting. At the meeting Ms. Boggie reported to the Mayor that she believed that his notice that her employment was in jeopardy amounted to unlawful retaliation for her participation in protected activities.

66. In response to Ms. Boggie's report, the Mayor became evasive and suggested that perhaps it would help if they assigned a senior human resources specialist within the Human Resources Department, rather than Plaintiff Boggie, to handle personnel matters within the Police Department.

67. At that time, the Mayor suggested there was merely a personality problem between Plaintiff Boggie and Police Chief Ingram. He indicated that there were hard feelings about Plaintiff Boggie not sending the Police Chief a 'get well' card in response to the Chief's recent injury.

68. The Mayor's reference to the Police Chief, in particular, further supported Ms. Boggie's suspicion that her own employment was in jeopardy because of her recommendation regarding the City's response to the complaint about the Chief, and Ms. Boggie's complaint regarding the retaliation against a witness.

69. Ms. Boggie responded that she had sent the Chief a 'get well' text exchange and emailed

him her hopes that he was doing well, to which the Mayor responded that it may be that her email was not as long as other City employees' emails to the Chief wishing him well in his recovery from his injury.

70. The Mayor's suggestion that the cause of Ms. Boggie's employment jeopardy was that she was not showing sufficient niceties to the Chief was coy, absurd, and pretextual.

71. The conversations in early May 2024 between Defendant City Mayor and Ms. Boggie occurred approximately four (4) months prior to her reappointment, which would have occurred at a September 16, 2024 City Council meeting.

72. On or about May 15, 2024 Ms. Boggie spoke with the Caldwell deputy City Attorney, Ms. Yett, and reported that she believed that her employment position with the City of Caldwell was being threatened because of her participation in protected activities. She reaffirmed her commitment to her professional responsibilities and to her legal duties.

73. On or about May 22, 2024 Defendant Wagoner explained to Plaintiff Boggie that he had spoken with other department directors, other than the Police and Fire Department, but that there were no complaints. In fact, the Mayor told Ms. Boggie that members of departments other than Police and Fire had expressed their support of her performance.

74. On or about May 24, 2024 Caldwell Police Chief Ingram emailed Ms. Boggie his objection to the webinar training. The Chief objected, using capitalized letters, that the "Creating a Welcoming and Respectful Work Culture" webinar addressed Equal Employment Opportunity subject-matter. Ms. Boggie deferred to the Mayor.

75. In the weeks and months that followed the Mayor's news concerning Ms. Boggie's

employment being in jeopardy, the Mayor repeatedly communicated to Ms. Boggie almost weekly that he would set up a meeting with the Police Chief to resolve whatever dispute he maintained existed between the two.

76. However, the Mayor never arranged a meeting in the four months time Ms. Boggie's position was held in limbo. On multiple occasions Ms. Boggie requested to set up a meeting with the Police Chief herself. The Mayor instructed against it, insisting he would arrange the meeting.

77. The position caused Ms. Boggie extreme emotional, spiritual, moral, and psychological turmoil and suffering. Despite the stress, Ms. Boggie committed to herself, and continued to communicate to the City Attorney's office, that she would perform her duties professionally and in accordance with the law.

\*

78. In mid-May 2024 Ms. Boggie became aware that an employee with the Caldwell Police Department, Nathan Douthit, was being placed on administrative leave pending an investigation for talking badly about a Lieutenant within the Police Department.[2]

79. As was the practice, the Police Department was investigating its own personnel matters outside of the Human Resources Department where they do not implicated citywide policy or allegations of illegality. There was no mention to Ms. Boggie that Mr. Douthit had complained or reported financial or legal wrongdoing.

80. On or about June 4, 2024 Ms. Boggie asked both the Mayor and deputy City Attorney Yett for an update to Mr. Douthit's employment status. Ms. Yett advised Ms. Boggie that he was still on leave.

81. On or about June 11, 2024 Ms. Boggie reported to Defendant Wagoner her concern

---

[2] See: *Nathan Douthit v. City of Caldwell et al*, U.S. District Court for the District of Idaho; Case No. 1:24-cv-00558-REP as filed November 11, 2024; (ECF Docket No. 1). See also in particular *id.* p. 4 -5 ¶¶ 21-25.

regarding the Chief's spending including around $30,000.00 in travel, around $30,000.00 in 'challenge coins,' and reported seemingly excessive expenditures made to attend Idaho Steelheads games and at local restaurants, and other expenditures.

82. On or about July 3, 2024 the Mayor advised Ms. Boggie that an outside agency, the Office of the Boise County Prosecutor, was investigating allegations of the Caldwell Police Department's misuse of public funds, in particular complaints regarding Police Chief Ingram's alleged misuse of public monies. Ms. Boggie asked the Mayor whether the investigators had contacted the Caldwell Finance Director or Treasurer regarding the investigation. The Mayor indicated that he believed the Finance Director and Treasurer had been contacted.

83. Later that day, Ms. Boggie learned from the Finance Director that neither she nor the Treasurer had been contacted by the outside investigators.

84. Ms. Boggie immediately told the Finance Director that she should let the Mayor know that neither she nor the Treasurer had been contacted, and accompanied the Finance Director to the Mayor's office, where the Finance Director reported to the Mayor that neither had been contacted by any investigator.

85. On information and belief, outside investigators with the Office of the Boise County Prosecutor never contacted the Director of Finance nor the Treasurer of the City of Caldwell prior to proffering the outside agency's determination against prosecution regarding the Caldwell Police Department's misuse of public funds investigation, which issued on or about July 26, 2024.

86. On or about July 29, 2024 Ms. Boggie emailed Chief Ingram, Attorney Yett, and the Mayor inquiring about an update on the Douthit matter but received no response.

87. On or about July 30, 2024 Ms. Boggie, during a meeting, again asked the Mayor about

the Douthit matter, to which Defendant Wagoner explained that he had a packet and for the first time told Ms. Boggie that he thought it might be a Whistleblower matter. Ms. Boggie asked the Mayor why she had not been involved in the matter to this point. The Mayor told Ms. Boggie that he did not know.

88. On or about August 5, 2024 Ms. Boggie spoke with deputy City Attorney Yett and asked for an update on the Douthit matter. Ms. Yett and Ms. Boggie agreed that the matter needed an independent investigation. Ms. Boggie asked why the Human Resources Department had been excluded from the matter. Ms. Yett indicated that she did not know.

89. On or about August 12, 2024 Defendant Wagoner told Ms. Boggie that he did not believe he would have the support of Council for her reappointment, and that did not intend to offer Ms. Boggie's name for reappointment as the City of Caldwell's Human Resources Director during an upcoming City Council meeting in September scheduled for that purpose.

90. Ms. Boggie responded by asking the Mayor to send her notice in writing once he had come to a final decision.

91. On or about August 16, 2024 Ms. Boggie reported to Defendant Mayor and the City Attorney, Mark Hilty, that she was not aware that Douthit had been placed on house arrest and was previously unaware that Douthit had made Whistleblower allegations and attempted to meet with the Mayor. Ms. Boggie reported that she was frustrated that she was being excluded from personnel matters, despite the charge of her position at Caldwell City Code, and particularly her exclusion from disciplinary matters originating from the Caldwell Police Department. Pursuant to Idaho Code § 6-2109 (Notice of Employee Protection) Ms. Boggie reported that all employee investigators need training on how to handle Whistleblower complaints and complained that the matter had been mishandled.

92. On or about August 19, 2024 Defendant Wagoner sent Ms. Boggie his final written decision not to offer her name for reappointment as Human Resources Director for the City of Caldwell, told her that her final day of employment with the City of Caldwell would expire on September 30, 2024, and thanked her for her service.

93. On or about August 19, 2024; about three hours following the Mayor's termination of Ms. Boggie's employment; Ms. Boggie was notified by the Caldwell Police Department that Nathan Douthit's employment with the City of Caldwell had been terminated by the decision of the Mayor.

94. On September 30, 2024 Ms. Boggie's employment with the City of Caldwell was unlawfully terminated.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Wrongful Termination in Violation of Idaho Code § 6-2101 *et seq.*)

95. Ms. Boggie incorporates all preceding allegations herein by reference as though fully set forth herein.

96. Ms. Boggie was a public employee who engaged in activities protected at Idaho Code § 6-2101 *et seq*.

97. Ms. Boggie reported, communicated in good faith concerns, and participated in investigations about the administration of the City of Caldwell, the Caldwell Police Department, misuse of public funds, and suspected violations of laws, rules, or regulations as protected under Idaho Code § 6-2104 and as outlined above.

98. Ms. Boggie objected to and refused to carry out directives that Ms. Boggie reasonable

believes violate the law or a rule or regulation adopted under the authority of the laws of Idaho, the City of Caldwell, and/or the United States.

99. Ms. Boggie's protected communications, reports, and participations were made at a time and in a manner that gave Defendants reasonable opportunity to correct the violations.

100.     Because of her reports, communications, and participation, Defendants have taken adverse action against Ms. Boggie affecting her employment, including the termination of her employment as alleged above. These actions have lasting negative impact to Ms. Boggie's future employment.

101.     There is a causal connection between Ms. Boggie's protected activity and the employer's adverse actions.

102.     As a direct and proximate result of the Defendants' acts or omissions Ms. Boggie has suffered damages. Ms. Boggie seeks all available actual and compensatory damages including but not limited to lost wages, back pay, benefits, including future pay, as well as emotional damages, and punitive damages in an amount to be determined at trial, but which amount exceeds $10,000.00

103.     Ms. Boggie is entitled to costs and attorney fees as allowed under Idaho Code § 6-2105.

### SECOND CAUSE OF ACTION
(Deprivation of Ms. Boggie's Property & Liberty Interest Without Due Process;
42 U.S.C. § 1983)

104.    Ms. Boggie incorporates all preceding allegations herein by reference as though fully set forth herein.

105.    At all times relevant hereto, Defendants acted under color of law when committing the acts complained of.

106.    Ms. Boggie had a property and liberty interest in her employment and a reasonable expectation that her employment would continue based on the conditions of her employment with the City, Idaho law, and the laws and Constitution of the United States of America.

107.    Defendants infringed upon these liberty interests by casting aspersion on her good name, reputation, honor, and the integrity of Ms. Boggie by spreading rumors regarding the termination of her employment for undisclosed and pretextual reasons, making false statements regarding the reason for the termination, and by abstaining and/or preventing Ms. Boggie from any opportunity to rebut the pretextual reasons asserted.

108.    The termination, and the veiled, undisclosed, and rumored reasons exchanged among and between the Defendants, public officials, and as-yet unknown and undetermined witnesses, without opportunity for challenge, impose a stigma on Ms. Boggie's professional reputation. Further, in the absence of her ability to refute or otherwise explain, she has been unjustly associated with allegations concerning Defendants' misconduct, casting further aspersion on her reputation and employment prospects.

109.     Defendants know, and always knew, that Ms. Boggie would not be able to

mitigate and/or cure the reputational damages of being terminated, given her position, in this wrongful way, as alleged.

110.     Ms. Boggie was entitled to an opportunity to confront and rebut the allegations made

against her that informed the Mayor's decision not to nominate Ms. Boggie for re-appointment, but Defendants denied her the opportunity to confront and rebut the allegations prior to taking and escalating the adverse actions against her, including but not limited to her termination.

111.     Defendants' conduct violated Ms. Boggie's Fourteenth Amendment rights by depriving her of her property and liberty interests without due process of law.

112.     Defendants' conduct violated clearly established constitutional rights of due process which a reasonable person would have known.

113.     As a result of Defendants' wrongful conduct, Ms. Boggie's professional reputation has been adversely impacted and it has foreclosed other employment opportunities.

114.     As a result of Defendants' wrongful conduct, Ms. Boggie has suffered, and will continue to suffer, actual damages and losses. Ms. Boggie is entitled to damages pursuant to 42 U.S.C. § 1983, *et seq.*, including but not limited to back pay and lost benefits, compensatory damages, costs, and attorney fees.

<u>THIRD CAUSE OF ACTION</u>
(Deprivation of Ms. Boggie's First Amendment Rights;
42 U.S.C. § 1983)

115.     Ms. Boggie incorporates all preceding allegations herein by reference as though fully set forth herein.

116.     Defendants retaliated against Ms. Boggie for her protected participation in the

exercise of Allison Butler and Nathan Douthit's First Amendment right to petition the government for redress of grievances by excluding Ms. Boggie from the investigation and involvement attending her position, and by taking adverse employment action against Ms. Boggie for her commitment to truthful testimony and participation, as alleged above.

117.    Defendants deprived Plaintiff her First Amendment right to petition the government for redress of grievances by refusing to and/or abstaining from nominating her for reappointment before the Caldwell City Council at the September 16, 2024 City Council meeting for which her reappointment had been previously scheduled.

118.    Defendants retaliated against Ms. Boggie for her protected speech opposition to sex discrimination, sex-based harassment, hostile work environmental discrimination, and whistleblowing regarding the waste of government resources by attempting to coerce, compel, and manipulate her expression to conform to the unlawful efforts and views of the Police Chief, the Mayor and public officials concerning matters of public import.

119.    Defendants retaliated against Ms. Boggie by attempting to coerce Ms. Boggie into speech concerning matters unrelated to her professional duties in order to appease public officials and appointed officials that she shared their views, and would abstain from contrary expression, where doing so concerned matters of public import.

120.    Defendants' conduct violated Ms. Boggie's clearly established constitutional right to free speech and retaliated for her protected activities attending lawful petition clause exercise which a reasonable person should have known.

121.     As a result of Defendants' wrongful conduct, Ms. Boggie has suffered, and will continue to suffer, actual damages and losses. Ms. Boggie is entitled to damages pursuant to 42 U.S.C. § 1983, *et seq.*, including but not limited to back pay and lost benefits, compensatory

damages, costs, and attorney fees.


*


FOURTH CAUSE OF ACTION
(Retaliation in Violation of the Equal Protection Clause
42 U.S.C. § 1983)

122.      Ms. Boggie incorporates all preceding allegations herein by reference as though fully set forth herein.

123.      Ms. Boggie engaged in protected activity under Section 1983 and the Equal Protection Clause when she reported and participated in the investigation of discrimination, sex-based harassment, the existence of a work environment hostile to women, and retaliation by the City, by the Mayor, and by the Police Chief to the City, to the City Attorney's office, and to the Mayor. She continued to raise concerns about ongoing discrimination, sex-based harassment, and the existence of a work environment hostile to women, and of ongoing retaliation when the City and the Mayor coerced and threatened her with the loss of her livelihood and professional reputation.

124.      In response to raising these concerns and reporting these violations of City Policy and the law, the Mayor subjected her to a pattern of retaliatory behaviors including by removing and excluding her from the performance of her employment duties, by threatening the loss of her job, and by refusing to offer her name for reappointment because of her protected activities.

125.      There is a causal link between Ms. Boggie's protected activity and the adverse actions she suffered.

126.      Mayor Wagoner and the City of Caldwell, by and through its administrators and

representatives, acted under color of law with respect to the employment-related decision described above.

127.     Mayor Wagoner and City of Caldwell officials and representatives retaliated against Ms. Boggie pursuant to its custom or policy of retaliation.

128.     There is a widespread practice of retaliating against employees who raise complaints in the workplace.

129.     Defendants' retaliation was intentional and Defendants acted with deliberate indifference toward their legal obligatios not to retaliate against employees who engage in protected activities.

130.     Defendants' concious and deliberate refusal to protect Ms. Boggie and other similarly situated exployees from retaliatory discrimination, harassment, and a pervasive hostile work environmental violated her right to equal protection.

131.     Defendants' conduct violated the clearly established constitutional rights of equal protection of which a reasonable person should have known.

132.     As a result of Defendants' wrongful conduct, Ms. Boggie has suffered, and will continue to suffer, actual damages and losses. Ms. Boggie is entitled to damages pursuant to 42 U.S.C. § 1983, *et seq.*, including but not limited to back pay and lost benefits, compensatory damages, costs, and attorney fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, and award the following relief:

1.  Back pay and lost benefits in amounts to be determined at trial;

2. Front pay and lost benefits in amounts to be determined at trial;

3. Compensatory and consequential damages, including—but not limited to— Ms. Boggie's emotional distress, loss of enjoyment of life, and reputational damages;

4. Pre-judgment and post-judgment interest;

5. Punitive damages where allowable;

6. Any other lawful relief determined to be in the interests of justice.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by a jury composed of not less than twelve (12) persons on all issues so triable.

DATED this 13ᵗʰ day of February 2025.

ERTZ LAW, PLLC

/s/Brian A. Ertz
Brian A. Ertz
*Attorneys for Plaintiff*